# Witmer's Appeal.

1. Trustees, in this state, are not liable beyond what they actually receive, except in cases of gross negligence, and are not responsible when, observing statutory provisions relating to investments, they deal with moneys entrusted to them in good faith, as men of ordinary prudence and sagacity deal with their own property.

2. It seems that the time allowed for the investment of trust-moneys should be such as the circumstances of each particular case would show to be reasonable.

3. A fund was invested by a trustee with the approval of the court, in the state loan of 1867, the interest on which was payable in August and February. The bonds were deposited in bank, and the interest drawn by the cashier. In the exercise of the option reserved to the state, the loan was paid in November 1875, when the interest ceased to accrue. No actual notice of this payment was received, either by the trustee or the cashier, until after February 1st 1876. *Held* (reversing the court below), that it was erroneous to surcharge the trustees with the interest between these dates. *Held, further*, that an allowance of two months wherein to reinvest the fund was not undue.

May 8th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Appeal from the Court of Common Pleas of *Lancaster county:* Of May Term 1878, No. 67.

Appeal of Adam K. Witmer from the decree of the court, Livingston, P. J., upon exceptions filed to the report of the auditor to audit the accounts of appellant as the trustee of David Conyngham.

The facts are sufficiently set forth in the opinion of this court.

*N. Ellmaker*, for appellant.—It is a harsh demand to make a

[Witmer's Appeal.]

trustee answerable for what never was in his hands, or to compel him to make up a deficiency not owing to his wilful default: Eyster's Appeal, 4 Harris 376. Common skill, prudence and caution are all that is required of trustees: Neff's Appeal, 7 P. F. Smith 96; Jones's Appeal, 8 W. & S. 143; Chambersburg Savings Fund Association's Appeal, 26 P. F. Smith 203. They are only liable to a surcharge when guilty of fraud or supine negligence: Moore's Appeal, 10 Barr 438; Springer's Est., 1 P. F. Smith 342.

The law allows a reasonable time for investment, and in Pennsylvania what is reasonable time has been variously decided. In Merrick's Estate, 1 Ash. 305; Huffer's Appeal, 2 Grant 341; Worrell's Appeal, 11 Harris 44; Lukens' Appeal, 11 Wright 356, and Hughes' Appeal, 53 Id. 500, six months were allowed. There is no fixed rule, and the circumstances of each case must, to a great extent, determine the question.

*D. G. Eshleman* and *William S. Amweg*, for appellee.—If trustees unnecessarily retain cash balances, or allow trust funds to remain unproductive, they are answerable for a loss thus occasioned: Hill on Trustees, 4th Am. ed., 566; Lewin on Trusts, 2d Am. ed., *359. Many cases assert the principle that a trustee for investment is bound to keep the fund constantly productive, so that the *cestui que trust* shall never be deprived of his interest. In Dietrich *v.* Heft, 5 Barr 87, 95, a guardian was charged interest on sums uninvested from the day on which they were received. In Lane's Appeal, 12 Harris 487, an assignee for the benefit of creditors, and therefore a trustee for distribution only, was allowed *two months* after the receipt of funds for their investment.

Mr. Justice WOODWARD delivered the opinion of the court; October 7th 1878.

Adam K. Witmer became the trustee of David Conyngham, under a bequest in the will of Mrs. E. Y. Conyngham, which was proved on the 6th of August 1864, and under an instrument executed by the *cestui que trust* himself, on the 7th of January 1868. The entire fund amounted to $20,657.33, of which the sum of $12,000 was invested in the Pennsylvania State Loan of 1867, on the 9th of March 1868. On the 16th of March this investment was approved by the Court of Common Pleas of Lancaster. The bonds were deposited in the Farmers' National Bank of Lancaster, and the interest was drawn by its cashier. In the exercise of the option reserved to the state, the loan was paid on the 1st of November 1875. The auditor has reported that actual notice of this payment was not received, either by Mr. Witmer or the cashier of the bank, until after the 1st of February 1876. Of necessity, interest ceased to accrue when the loan was redeemed, and for three months, therefore, the fund was unproductive. Receiving the money in

February 1876, with three months' interest from August to November 1875, the auditor decided that it was the trustee's duty to re-invest the principal by the 1st of April 1876, a period of the year at which, in the language of the report, "liens upon real estate of undoubted sufficiency are always to be had." From that date, accordingly, interest was surcharged. Upon exceptions filed in the Common Pleas, the court held that the trustee had "fallen short of the activity, care and diligence exercised by men of ordinary vigilance and prudence in conducting their own affairs," and ordered the report to be so corrected as to charge him with interest from the 1st of November 1875 to the 1st of April 1876.

No doubt can be entertained of the accuracy of the facts found by the auditor. It is true that Mr. Conyngham testified that in August 1875, he gave to Mr. Witmer a notice he had cut from a newspaper of the payment of the loan. But he added that it was declared to be payable to the Merchants' and Mechanics' Bank of Philadelphia four days after the date of the notice in the paper. In its inherent features, this testimony was unreliable. No notice of payment within four days could have been given, and the name of the bank was mistaken. Mr. Witmer's statement was positive that he had no knowledge that the loan was to be paid off. And it is not credible, if Mr. Conyngham's recollection was accurate, that he would have received, and his trustee would have paid, on the 8th of February 1876, the whole interest for the preceding six months, without inquiry or remark. It does not, perhaps, bear on this question that the excess paid over was returned on the 30th of June 1876, as the amount was simply retained out of the proceeds of other investments in the trustee's hands. The testimony of the cashier of the Farmers' National Bank that he had no knowledge of the payment of the loan, was also positive and distinct.

In considering the propriety of the decree of the Common Pleas, the apparent fact is to be taken into account that the interest with which he was surcharged had never been received by the trustee. Was his failure to collect the fund for three months, and to reinvest it during two months more, such an omission as ought to be characterized as supine negligence or wilful default? It has not been discovered that his place of residence at the time when the loan was paid off was proved, but it appears from his testimony that he was carrying on a commission, transportation, coal and lumber business at Paradise, in Lancaster county. He received and read the Philadelphia "North American," and two local newspapers, and they furnished him no information on this subject. The auditor found he had no actual notice, and the question is presented, whether he was blameable for failing to discover the advertisement in the papers which the state officers selected for its publication? The bonds were in the custody of a bank cashier, who had authority to collect the interest. The trustee would naturally

[Witmer's Appeal.]

rely on his agent for such information as he would need in regard to the situation of the fund. When the interest, due in August 1875, was received, the loan had still two years to run, for the time fixed for its absolute payment was not reached until 1877. And there was nothing in the evidence to show that he had reason to believe that the time of payment would be anticipated. Under the circumstances disclosed, the failure to ascertain the action of the state authorities at a date midway between two semi-annual interest periods, ought not to be treated as amounting to gross neglect. It has been repeatedly said that it is the harshest demand that can be made in equity to compel trustees to make up a deficiency not owing to their wilful default: Jackson *v.* Jackson, 1 Atk. 513; Johnson's Appeal, 12 S. & R. 317; and Neff's Appeal, 7 P. F. Smith 91. With all the publicity that is given to the lists of the called bonds of the United States, it can well happen that multitudes of competent and careful business men may hold such bonds until the next succeeding interest period, in entire ignorance that their redemption has been provided for. A trustee is called upon to exert precisely the same care and solicitude in behalf of his *cestui que trust* as he would do for himself; but greater measure than this a court will not exact: Lewin on Trusts *299; Morley *v.* Morley, 2 Ch. Ca. 2. The authorities referred to in the argument have settled the rule in this state that trustees are not liable beyond what they actually receive, except in cases of gross negligence, and are not responsible when, observing statutory provisions relating to investments, they deal with the moneys intrusted to them in good faith, as men of ordinary prudence and sagacity deal with their own property. Tried by this rule, the appellant ought not to have been subjected to surcharge for interest between November 1875 and February 1876.

A single point remains to be considered. The appellant received the money paid by the state in February, and retained it without reinvestment until after the 1st of April. The auditor charged him with interest from that date, and to this interest during the intervening period was added by the court. The financial condition of the country since 1873 has been such as to create distrust and inspire caution in the minds of business men of all classes, and in relation to securities of every grade. The report has shown that the 1st of April is the usual time for making investments in mortgages on real estate in Lancaster county. In Worrell's Appeal, 11 Harris 44, the Orphans' Court of Philadelphia had allowed a guardian but a single month from the date of their receipt for investing the moneys of his ward. In the opinion of this court, Judge KNOX said: "We have, in several recent cases, held that, ordinarily, six months should be allowed for this purpose." From subsequent decisions, however, it would seem that the time should be such as the circumstances of each particular case would show to be reason-

[Witmer's Appeal.]

able : Lukens's Appeal, 11 Wright 356 ; Hughes's Minors' Appeal, 3 P. F. Smith 500. The auditor here allowed the trustee an interval of less than two months. Regard being had to the financial situation, the proximity to the 1st of April, and the amount of the fund, the indulgence granted was not undue.

> The decree of the Court of Common Pleas is reversed, and it is ordered that the report of the auditor be confirmed.